IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 16 2022

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Todd M. Swensen
Assistant United States Attorney
402 E. Yakima Ave., Ste. 210
Yakima, WA 98901-2760
Tel. (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:22-CR-2017-MKD |
| Plaintiff, | Plea Agreement |
| v. | FED. R. CRIM. P. 11(c)(1)(C) |
| ALEXANDER SCOTT STEVENS, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Todd M. Swensen, Assistant United States Attorney for the Eastern District of Washington, and Defendant ALEXANDER SCOTT STEVENS ("Defendant"), both individually and by and through Defendant's counsel, Deputy Federal Defender Nick Mirr, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalty</u>:

Defendant agrees to enter a plea of guilty to the Indictment filed on February 15, 2022, which charges Defendant with Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), a Class C felony.

Defendant understands that the following potential penalties apply:

    a. a term of imprisonment of no more than 10 years;

    b. a term of supervised release of not more than 3 years;

PLEA AGREEMENT - 1

   c. a fine of up to $250,000.00;

   d. restitution; and

   e. a $100.00 special penalty assessment.

 2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

   a. Five (5) years in prison if the offense that resulted in the term of Supervised Release is a class A felony;

   b. Three (3) years in prison if the offense that resulted in the term of Supervised Release is a class B felony; and/or

   c. Two (2) years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense(s) of conviction.

 3. <u>Rule 11 Nature of the Plea Agreement</u>:

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)").  Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is between 70-84 months imprisonment.  The United States and Defendant agree to make that sentencing recommendation to the Court.  Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type

PLEA AGREEMENT - 2

have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 84 months or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 70 months or a term of supervised release of less than three years or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

4. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 3

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a.    The right to a jury trial;

    b.    The right to see, hear, and question witnesses;

    c.    The right to remain silent at trial;

    d.    The right to testify at trial; and

    e.    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, Defendant understands that he retains the right to be assisted through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if he cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the court are mooted by the Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Elements of the Offense</u>:

The United States and the Defendant agree that in order to convict the Defendant of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), the United States would have to prove beyond a reasonable doubt the following elements:

//

a. *First*, Defendant knowingly possessed firearms;

b. *Second*, the firearms had been transported from one state to another or between a foreign nation and the United States;

c. *Third*, at the time Defendant possessed the firearms, Defendant had been convicted of a felony; and

d. *Fourth*, at the time Defendant possessed the firearms, Defendant knew Defendant had been convicted of a felony.

7. Factual Basis and Statement of Facts:

The United States and Defendant stipulate and agree that the following facts are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that his statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On January 2, 2022, at approximately 2009 hours, an alarm at the Washington Department of Fish and Wildlife (WDFW) Region 3 Headquarters, located at 1701 S. 24th Avenue, Yakima, Washington. A WDFW employee responded and reported the incident to the Yakima Police Department, who responded to the WDFW. It was subsequently discovered that 18 firearms, including one silencer, had been stolen from the secure evidence storage facility within the WDFW.

Upon arrival, the police noticed that the chain link fence at the east end of the property, which borders Tahoma Cemetery, had been cut. The WDFW ancillary building is located approximately 18 feet from the property's east fence line. This ancillary building has four garage bays and houses secure evidence storage and the detachment office at the east end of the building. During their investigation, the police noticed a hole cut into the facility's east exterior wall, approximately 20 or so feet from where the fence had been cut, and large enough for a person to crawl

PLEA AGREEMENT - 5

through. The hole cut into the exterior wall led directly into the ancillary building's secure room where WDFW secures seized firearms.

A subsequent inventory of the secure evidence room revealed that 18 firearms were missing. The stolen firearms included the following:

 a. Revelation 350H break action single shot 12-gauge shotgun, bearing serial number A169686;

 b. H&R 1871 46-70 caliber break-action rifle, bearing serial number HS260932;

 c. New England Handy .223 caliber break-action rifle bearing serial number NP200647;

 d. H&R .38 special caliber revolver with unknown serial number;

 e. Browning Bar semi auto 7mm rem mag rifle bearing serial number 96303M71;

 f. CVA Hunter bolt .50 caliber ML bearing serial number 6113211612102;

 g. Remington pump action model 3112 shotgun bearing serial number 78703;

 h. Mossberg pump action 12-gauge shotgun bearing serial number UM935880;

 i. Marlin pump action 12-gauge shotgun bearing serial number 12132;

 j. Remington 870 20-gauge pump shotgun bearing serial number 170313X;

 k. Norinco MAK-90 semi auto AK-47 bearing serial number 94135372;

 l. J Stevens Arms Co. break action single shot 12-gauge shotgun bearing serial number 107B;

 m. Aero precision X15 firearm with aimpoint optic bearing serial number USA37536;

 n. Windham Weaponry .223 caliber rifle bearing serial number WW123980;

 o. DPMS model LR-308 .308 caliber rifle bearing serial number 124746;

PLEA AGREEMENT - 6

      p.    Cold Creek 338 LAPUA bolt action rifle without a serial number (custom-made firearm);

      q.    Ruger LCP .380 caliber pistol bearing serial number 373-53648; and

      r.    CZ P-10 C 9mm semi auto pistol bearing serial number D238711.

A Yakima Police Department forensics investigator developed a palm print impression located above the hole cut into the east exterior wall of the WDFW ancillary building. The palm print was approximately two inches above the described hole. Two rifles and a bow were located on the ground outside the hole. A medium-sized flashlight was also located approximately two feet from the two rifles and bow.

The palm print was subsequently processed through the ABIS/WIN network, resulting in a hit to FBI number 382355ED9, which is associated with state identification number (SID) WA25219411. These numbers are assigned to Defendant. The palm prints for the listed FBI/SID numbers were provided by the Washington State Patrol (WSP). STEVENS' palm print sent by the WSP were compared to the palm print recovered at the WDFW ancillary building and determined to be a match. The palm prints were verified by a second Evidence Technician.

Defendant had previously been convicted of a Washington State class B felony, which was punishable by sentence of imprisonment for more than 12 months. At the time Defendant possessed the firearms, Defendant knew that he had previously been convicted of a felony.

Defendant hereby stipulates that on or about January 2, 2022, Defendant possessed the Remington pump action model 3112 shotgun bearing serial number 78703; the Remington 870 20-gauge pump shotgun bearing serial number 170313X; and the Ruger LCP .380 caliber pistol bearing serial number 373-53648.

The Remington pump action model 3112 shotgun bearing serial number 78703; Remington 870 20-gauge pump shotgun bearing serial number 170313X; and Ruger LCP .380 caliber pistol bearing serial number 373-53648, were not manufactured in the State of Washington.

PLEA AGREEMENT - 7

8. <u>The United States' Agreements</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement at any time before sentencing.

9. <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. Defendant and the United States agree to the following Guidelines calculations:

    a. *Base Offense Level*:

The United States and Defendant agree that the base offense level for Felon in Possession is 20. U.S.S.G. § 2K2.1 (a)(6).

    b. *Specific Offense Characteristics*:

The United States and Defendant agree that Defendant's base offense level is increased by 4 levels because the offense involved at least eight but not more than 24 firearms (U.S.S.G. §2k2.1(b)(1)(B)) and increased further by 2 levels because the firearms were stolen. U.S.S.G. §2k2.1(b)(4).

    c. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a 3-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

        i. accepts this Plea Agreement;

        ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.  demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.  provides complete and accurate information during the sentencing process; and

    v.  does not commit any obstructive conduct.

Defendant and the United States agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

  d. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

  e. *Criminal History*:

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

  10. <u>Incarceration</u>:

The United States and Defendant agree to recommend a sentence between 70-84 months imprisonment.

//
//

PLEA AGREEMENT - 9

11. <u>Supervised Release</u>:

The United States and Defendant make no agreement as to a recommendation of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's supervised release is final and non-appealable; that is, even if Defendant is dissatisfied with the conditions of supervised release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of supervised release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

  a. The United States Probation Officer may conduct, upon reasonable suspicion of a condition of supervised release, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control;

  b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

  c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to Defendant's ability.

12. <u>Criminal Fine</u>:

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is dissatisfied with a fine ordered by the Court, that will not be a basis for Defendant to withdraw

PLEA AGREEMENT - 10

Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Judicial Forfeiture</u>:

Defendant agrees to voluntarily forfeit any and all right, title and interest he has in the following listed firearms in favor of the United States:

- Remington pump action model 3112 shotgun bearing serial number 78703;
- Remington 870 20-gauge pump shotgun bearing serial number 170313X; and
- Ruger LCP .380 caliber pistol bearing serial number 373-53648.

Defendant acknowledges that the firearms covered by this agreement is subject to forfeiture as property facilitating or involved in illegal conduct in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), Felon in Possession of a Firearm, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding.

Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of any asset(s) covered by this agreement. Defendant consents to the forfeiture and disposal of assets without further notice.

Defendant further agrees to waive all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s).

Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

14. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's conviction and sentence if the Court imposes a term of imprisonment consistent with the terms of this Rule 11(c)(1)(C) Plea Agreement.

If the Court indicates its intent to impose a sentence above the Rule 11(c)(1)(C) terms of this Agreement and Defendant chooses *not* to withdraw, then Defendant: (a) may appeal only Defendant's sentence, but not Defendant's conviction; (b) may appeal Defendant's sentence only if it exceeds 84 months of imprisonment; and (c) may appeal only the substantive reasonableness of Defendant's sentence.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

PLEA AGREEMENT - 12

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Compassionate Release</u>:

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

 b. *Medical Condition of Defendant.*

  i. Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

  ii. Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging

PLEA AGREEMENT - 13

      process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

  c. *Age of Defendant.*

    i. Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

    ii. Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

  d. *Family Circumstances.*

    i. The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

    ii. Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

  e. *Subsequent Reduction to Mandatory Sentence.*

    i. Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii. after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

PLEA AGREEMENT - 14

    iii. the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

  f. *Ineffective Assistance of Counsel.*

    i. Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

      1. did not know at the time of Defendant's guilty plea, and

      2. could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

  a. this Plea Agreement shall become null and void;

  b. the United States may prosecute Defendant on all available charges;

  c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

//
//

PLEA AGREEMENT - 15

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.  **Integration Clause:**

The United States and Defendant acknowledge that this Plea Agreement constitutes the entire agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.  This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities.  The United States and Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____        16 Aug 22
Todd M. Swensen                          Date
Assistant U.S. Attorney

//

//

PLEA AGREEMENT - 16

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney.  I understand and voluntarily enter into this Plea Agreement.  Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

_ALEXANDER STEVENS AP_     _8-8-22_
ALEXANDER SCOTT STEVENS          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_/s/ Nick Mirr_     _8/16/22_
NICK MIRR                        Date
Attorney for Defendant

PLEA AGREEMENT - 17